IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DR. GERHARD WALTER, AS THE
INSOLVENCY ADMINISTRATOR OF
THE ESTATE OF AERO LLOYD
FLUGREISEN GMBH & CO
LUFTBERKEHRS-KG CORPORATION

*Plaintiff*,

vs.

Case No. 09-1019-EFM

THE MARK TRAVEL CORPORATION, a
Nevada Corporation; and TRANS GLOBAL
TOURS, L.L.C., a Minnesota Limited
Liability Company,

*Defendants.*

**MEMORANDUM AND ORDER**

Plaintiff is a foreign attorney appointed by a German court to serve as the administrator of the bankruptcy estate of a German charter airline, Aero Lloyd Flugreisen GmbH & Co Luftverkers-KG. In 2003, when Aero Lloyd went through the German bankruptcy process, its administrator settled all outstanding transactions between Aero Lloyd and Ryan International Airlines, Inc. Ryan assigned any payment claims it may have had against Mark Travel Corporation and Trans Global Tours to Aero Lloyd. Now, Plaintiff brings a breach of contract claim against Mark Travel Corporation and Trans Global Tours for the money due to Ryan International Airlines.

Defendants seek dismissal on the basis that the Court lacks personal jurisdiction over them. In the alternative, Defendants seek transfer of the case to the Eastern District of Wisconsin. Before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Transfer (Doc.14). The motion has been fully briefed. For the following reasons, the Court denies the motion.

**I. Factual and Procedural Background**

The following facts are taken from Plaintiff's complaint, the affidavits Plaintiff attached to his response to Defendants' motion to dismiss, and the affidavit attached to Defendants' motion to dismiss.[1] Plaintiff Dr. Gerhard Walter is a citizen of Germany and is the Insolvency Administrator of the Estate of Aero Lloyd Flugreisen GmbH & Co Luftverkehrs-KG ("Aero Lloyd"). Defendant The Mark Travel Corporation, doing business as Funjet Vacations, ("Mark Travel"), is a corporation incorporated in Nevada with its principal place of business in Milwaukee, Wisconsin. Defendant Trans Global Tours, L.L.C ("Trans Global") is a limited liability company organized under the laws of the state of Minnesota with its principal place of business in either Minneapolis, Minnesota or Milwaukee, Wisconsin.[2]

Aero Lloyd was engaged in the business of purchasing, owning, leasing, operating, and selling aircraft. Ryan International Airlines, Inc. ("Ryan") is a corporation incorporated in Kansas and had its principal place of business in Wichita, Kansas through 2006. Ryan remains incorporated under Kansas law, but in 2006, Ryan moved its principal offices to Rockford, Illinois. Ryan was engaged in the business of leasing, operating, and chartering aircraft. Defendants Mark Travel and

---

[1]Admittedly, more detailed factual allegations were in Plaintiff's affidavits, rather than in Plaintiff's complaint.

[2]Plaintiff alleges Trans Global's place of business is in Minnesota, while Defendants contend it is in Wisconsin.

Trans Global charter aircraft from aircraft operators for the purpose of providing and selling vacation packages to consumers.

In June of 2002, Aero Lloyd, Mark Travel, and Trans Global entered into a letter agreement. Under this agreement, Aero Lloyd would lease six aircraft to Ryan under written lease agreements, and Mark Travel and Trans Global would charter the six aircraft from Ryan under written charter agreements for flights during December 2002-April 2003 (the First Season) and for two additional seasons, December 2003-April 2004 (the Second Season) and December 2004-April 2005 (the Third Season) (the "Mark Travel Letter Agreement").

Around July 2002, Aero Lloyd and Ryan entered into a letter agreement. This agreement provided that Aero Lloyd would lease six aircraft to Ryan under written lease agreements, and Mark Travel and Trans Global would charter the six aircraft from Ryan under written charter agreements for flights during December 2002-April 2003 (the First Season), and for two additional seasons, December 2003-April 2004 (the Second Season) and December 2004-April 2005 (the Third Season) (the "Ryan Letter Agreement"). On or around November 3, 2003, the Ryan Letter Agreement was amended by and between Aero Lloyd and Ryan.

Pursuant to the Mark Travel Letter Agreement and Ryan Letter Agreement, on or about June 14, 2002, Mark Travel, Trans Global, and Ryan entered into an aircraft charter agreement for six aircraft for the First Season (the "2002-2003 Charter Agreement"). The 2002-2003 Charter Agreement was negotiated and drafted in Wichita, Kansas by Ryan's general counsel, Jack Scott McInteer, and McInteer executed the Agreement in Wichita. Defendants state that the agreements were negotiated in Milwaukee, Wisconsin and executed by mail or fascimile.

The Agreement required periodic and final accounting to be prepared and exchanged and all payments to be made by Mark Travel and Trans Global to Ryan in Wichita, Kansas. All notices and communications between Mark Travel and Trans Global and Ryan were required to be made in writing to Ryan at its address in Wichita, Kansas. Pursuant to the Mark Travel Letter Agreement and Ryan Letter Agreement, Aero Lloyd and Ryan also entered into aircraft lease agreements for six aircraft to be chartered by Ryan to Mark Travel and Trans Global (the "2002-2003 Lease Agreements").

Ryan completed and performed its responsibilities under the 2002-2003 Charter Agreement. Plaintiff alleges that Mark Travel and Trans Global breached the 2002-2003 Charter Agreement by failing to make all payments, in an amount of $56,000 to be paid to Ryan in Wichita, Kansas.

On or about April 25, 2003, Mark Travel and Ryan entered into an aircraft charter agreement covering an aircraft leased from Aero Lloyd to Ryan for the time period from June 1, 2003 through May 31, 2004 (the "Year Round Aircraft Charter Agreement"). The Year Round Charter Agreement required periodic and final accountings to be prepared and exchanged and all payments to be made by Mark Travel and Trans Global to Ryan in Wichita, Kansas. On or about May 14, 2003, Aero Lloyd and Ryan also entered into an aircraft lease agreement for an aircraft to be chartered by Ryan to Mark Travel under the Year Round Aircraft Agreement (the "Year Round Lease Agreement").

Ryan fully performed its obligations under the Year Round Aircraft Charter Agreement. Aero Lloyd alleges that Mark Travel failed to utilize, fly and pay for the guaranteed stated block hours for the aircraft under the Year Round Aircraft Charter Agreement. Mark Travel was obligated to make payment to Ryan for the Shortfall Payments in an amount in excess of $152,400.

Pursuant to the Mark Travel Letter Agreement and Ryan Letter Agreement, in or about September 2003, Mark Travel, Trans Global and Ryan entered into an aircraft charter agreement for six aircraft for the second season (the "2003-2004 Charter Agreement"). The 2003-2004 Charter Agreements between Ryan, Mark Travel, and Trans Global were negotiated and drafted in Wichita, Kansas by Ryan's general counsel, Jack Scott McInteer. It was executed by Jane Paladino, Ryan's Vice-President, in Wichita, Kansas. Defendants state that the agreements were negotiated in Milwaukee, Wisconsin and executed by mail or fascimile.

The Agreement required periodic and final accountings to be prepared and exchanged, and all payments to be made by Mark Travel and Trans Global to Ryan in Wichita, Kansas. All notices and communications between Mark Travel, Trans Global, and Ryan were required to be made in writing to Ryan at its address in Wichita, Kansas. In addition, pursuant to the Mark Travel Letter Agreement and Ryan Letter Agreement, in or about November and December 2003, Aero Lloyd and Ryan entered into aircraft lease agreements for six aircraft to be chartered by Ryan to Mark Travel and Trans Global under the 2003-2004 Charter Agreement (the "2003-2004 Lease Agreement").

Aero Lloyd alleges that Mark Travel failed to utilize, fly and pay for the guaranteed stated block hours for the aircraft under the 2003-2004 Charter Agreement. Mark Travel was obligated to make payment to Ryan for the Shortfall Payments in an amount in excess of $650,675.

Aero Lloyd stated that under the Charter Agreements, operation control of all aircraft leased by Aero Lloyd to Ryan and chartered by Mark Travel was managed by Ryan in Wichita, Kansas. This included crew scheduling, aircraft flight following, and aircraft dispatch. During the 2002-2003 and 2003-2004 seasons, Mark Travel contacted Ryan in Wichita, Kansas to schedule, arrange, and negotiate Ryan's dispatch of the chartered aircraft to and from cities requested by Mark Travel. The

cities did not include Wichita, Kansas. Based upon such instructions, Ryan, from its headquarters in Wichita, Kansas, made the necessary arrangements to satisfy Mark Travel's schedules. On average, each aircraft was dispatched for approximately one round trip a day by Ryan based upon Mark Travel's instructions, schedules, and arrangements. During the 2002-2003 and 2003-2004 seasons, various employees and officers of Mark Travel periodically attended meetings with Ryan employees and officers at Ryan's headquarters in Kansas. Document review by Mark Travel accounting personnel also occurred in Wichita, Kansas during or after both seasons.

Aero Lloyd filed for bankruptcy in Germany on October 16, 2003. On December 17, 2003, Aero Lloyd was adjudged bankrupt and since then, Aero Lloyd has been under the administration of Dr. Gerhard Walter in his capacity as Insolvency Administrator. Aero Lloyd alleges that the amounts due from Mark Travel to Ryan were for the ultimate benefit of Aero Lloyd under the lease agreements between Aero Lloyd and Ryan. Aero Lloyd made claim against Ryan for those amounts. To resolve the dispute, Aero Lloyd and Ryan entered into an Accord and Release, dated February 16, 2005. Pursuant to the Accord and Release, Ryan assigned to the Insolvency Administrator any payment claims Ryan had against Mark Travel and Trans Global. Ryan agreed that any amounts that it might receive for any payment claims should be transferred to the Insolvency Administrator.

Due to the Accord and Satisfaction between Aero Lloyd and Ryan assigning any payment claims Ryan may have against Mark Travel and Trans Global, Plaintiff Aero Lloyd brings a breach of contract claim against Mark Travel and Trans Global. Defendants argue that they are not subject to personal jurisdiction in Kansas. In the alternative, Defendants assert that the action should be transferred to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

**II. Analysis**

    **A. Personal Jurisdiction**

Defendants assert that they are not subject to personal jurisdiction because the only connection they have with the forum state is the fact that Ryan, a non-party, previously maintained its principal offices in the state. Defendants contend that they are incorporated and maintain their principal places of business outside of Kansas; they do no business in Kansas and do not maintain an office, property, or employees in Kansas; the Charter Agreements at issue were negotiated in Milwaukee, Wisconsin; the agreements provided that services would be performed outside of the state of Kansas, with one location in Milwaukee, Wisconsin; and their employees only traveled to Wichita approximately once a year.

A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that personal jurisdiction over the defendant is appropriate.[3] In a pre-trial motion to dismiss, such as when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[4] Once the plaintiff makes a prima facie showing, the defendant must "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[5]

---

[3] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[4] *Id.* "Eventually, of course, a plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial." *Reed v. Phillip Roy Fin. Services, Inc.*, 2006 WL 1307611, at *1, n. 1 (D. Kan. May 9, 2006) (citations omitted).

[5] *Thermal Components,* 98 F. Supp. 2d at 1227 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))).

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'"[6] "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[7]

In a diversity action, "personal jurisdiction over a nonresident defendant is determined by the law of the forum state."[8] "The proper inquiry is . . . whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution."[9] Courts may proceed directly to the due process issue because the Kansas long-arm statute is construed liberally;[10] however, the Court will first consider whether Kansas' long-arm statute is applicable in this case.

### 1. Long-arm Statute

K.S.A. § 60-308(b)(1)(E) provides that "[a]ny person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality . . . submits . . . to the jurisdiction of the courts of this state as to . . . entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." "[T]his provision allows the court to exercise personal jurisdiction over a nonresident when the only ground

---

[6] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).

[7] *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

[8] *Caldwell-Baker Co. v. S. Illinois Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002).

[9] *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304-05 (10th Cir. 1994).

[10] *Id.* at 1305.

is a contract with a resident to be partially performed in the forum."[11] "Courts have found that the mere payment of funds to the resident's offices within the forum constitutes part performance by the nonresident."[12]

Here, Ryan and Defendants entered into a contract in which it clearly stated at the top that Ryan's place of business was in Wichita, Kansas, and that Ryan was incorporated in Kansas. The contract required Defendants to make payments to Ryan through an escrow agent in Wichita, Kansas. Under the escrow agreement provision in the contract, a specific bank was designated in Wichita, Kansas. Additionally, the contract required all notices and communication between Ryan and Defendants to be made in writing and delivered or mailed to the address at the top of the agreement in Wichita, Kansas. Accordingly, the Court finds that the exercise of personal jurisdiction over Defendants is proper under Kansas' long-arm statute because Defendants entered into a contract with a resident of Kansas requiring partial performance in Kansas.

*2. Due Process*

The Due Process Clause allows the exercise of personal jurisdiction over a non-resident defendant "only so long as there exist 'minimum contacts' between the defendant and the forum state."[13] "The 'minimum contacts' standard may be met "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate' to those activities."[14] This involves a two step inquiry: (1) whether "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being

---

[11]*Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 320 (D. Kan. 1995) (citations omitted).

[12]*Id.* (citing *Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1312 (10th Cir. 1982).

[13]*OMI Holdings*, 149 F.3d at 1090 (citation omitted).

[14]*Id.* at 1091 (quoting *Burger King*, 471 U.S. at 472).

haled into court there;'"[15] and (2) "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"[16]

### *a. Minimum Contacts*

The minimum contacts inquiry requires the Court to determine "whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state."[17] "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state."[18] "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."[19]

Defendants assert that they did not purposefully avail themselves to the jurisdiction of Kansas because they did not transact business in Kansas, and the agreements were negotiated in Milwaukee, Wisconsin and executed by mail or fascimile. They contend that their only connection to Kansas are the payments made to a bank in Kansas, which is required by 14 C.F.R. Part 380, and perhaps two isolated occasions in which their employees traveled to Ryan's Wichita offices to review documents.

---

[15]*Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir. 2004) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[16]*Id*. at 1075-76 (citing *OMI Holdings*, 149 F.3d at 1091)).

[17]*OMI Holdings*, 149 F.3d at 1091 (quotations and citations omitted).

[18]*Rambo v. Am. S. Ins., Co.,* 839 F.2d 1415, 1420 (10th Cir. 1988) (citation omitted).

[19]*Pehr*, 874 F. Supp. at 320 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Regardless of whether Ryan was required by 14 C.F.R. Part 380 to set up an escrow account,[20] Defendants entered into the contract knowing that payments were to be made to Ryan in Wichita, Kansas. In fact, the allegations state that Defendants sent payment to Ryan in Wichita, Kansas. In addition, correspondence was required to be sent to Ryan in Wichita, Kansas. While the use of the chartered planes did occur outside of Kansas, the contract between Ryan and Defendants required partial performance of the contract in Kansas. This is particularly true of Ryan as all of Ryan's performance appears to have occurred in Kansas. Plaintiffs have also submitted affidavits that several of Defendants' employees traveled to Wichita, Kansas for meetings several times each season.[21] As such, the Court finds that Plaintiffs have established the Defendants had minimum contacts with Kansas, and Defendants should have reasonably anticipated being haled into court in the State of Kansas.

### b. Fair Play and Substantial Justice

Because Plaintiff has made a prima facie showing of minimum contacts, Defendant must establish a "compelling case" that jurisdiction would be unreasonable.[22] The determination of fair play and substantial justice "requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state."[23] To

---

[20] The parties dispute the applicability and whether Ryan was required to set up an escrow account.

[21] While Defendants contend that they only traveled to Wichita on perhaps two isolated occasions, they do admit that they traveled to Wichita for document review. Plaintiff contends that Defendants traveled to Wichita on numerous occasions. "[I]f the affidavits are conflicting, the factual disputes are resolved in plaintiff's favor and the prima facie case will have been established." *Traffas v. Bridge Capital Corp.*, 1990 WL 251740, at *3 (D. Kan. Dec. 3, 1990). ]

[22] *See AST Sports Science, Inc. v. CLF Distrib., Ltd.*, 514 F.3d 1054, 1063 (10th Cir. 2008); *see also Thermal Components,* 98 F. Supp. 2d at 1227.

[23] *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

assess reasonableness, there are five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[24]

"[T]he reasonableness prong of the due process inquiry evokes a sliding scale; the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."[25]

With regard to the first factor, Defendant Mark Travel is a Nevada corporation with its principal place of business in Wisconsin, and Defendant Trans Global is incorporated in Minnesota and based in Wisconsin. Although there is a burden in requiring these Defendants to litigate in Kansas, "defending a suit in a foreign jurisdiction is not as burdensome as in the past."[26]

Defendants contend that the burden is substantial and would impair its ability to access non-party witnesses and evidence located with Ryan in Rockford, Illinois. Defendants' general counsel stated by affidavit that "witnesses and evidence relevant to this case are most likely to be found in Milwaukee, Wisconsin, in Rockford, Illinois, to which Ryan moved its offices after leaving Wichita in 2006, and presumably, in Germany." However, Plaintiff contends that Defendants have not submitted any evidence of substantial expense nor evidence of the identity of any witnesses or evidence located with Ryan in Rockford, Illinois. In contrast, Plaintiff has submitted evidence that

---

[24]*Id.*

[25]*Benton*, 375 F.3d at 1079 (citations omitted).

[26]*Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982).

-12-

three of Ryan's former employees with personal knowledge about the facts of this case still reside in Wichita, Kansas. Plaintiff also contends that two other employees of Ryan with personal knowledge reside in Florida and Oklahoma. Because Plaintiff has identified several known witnesses to reside in Wichita, Kansas and Defendants have not demonstrated a substantial burden, the Court finds this factor to weigh in Plaintiff's favor.

Regarding the second factor, Defendants contend that Kansas has no interest in resolving this dispute. The contract at issue is between Ryan and Defendants, and Ryan moved its principal place of business from Wichita, Kansas in 2006. Plaintiff is a bankrupt German airline with no presence in Kansas, who was assigned Ryan's payment contract claim against corporations outside of the state of Kansas. In addition, the contract at issue contains a choice of law provision designating New York law as controlling. While Defendants are correct that Ryan recently moved its principal place of business outside of Kansas, the time period at issue is when Ryan had its principal place of business in Wichita, Kansas. As such, this factor weighs in Plaintiff's favor.

With respect to the third factor, Defendants assert that Plaintiff, as a German citizen, has no legitimate interest in a Kansas forum and contends that Plaintiff may find himself with problems obtaining non-party evidence in Wisconsin or Illinois. Plaintiff asserts that is has a legitimate interest in the Kansas forum because the claim under the Charter Agreements at issue accrued in Kansas, and Plaintiff has identified three Ryan ex-officer and ex-employee witnesses residing in Wichita, Kansas. In addition, Plaintiff contends that Defendants have not identified a single witness in Wisconsin or Illinois relevant to the dispute which indicates litigating the dispute in Kansas would be more efficient than litigating in Wisconsin. For the reasons stated by Plaintiff, the Court agrees and finds this factor weighs in favor of Plaintiff.

Concerning the fourth and fifth factors, Defendants assert that they also weigh against Plaintiff because it appears to Defendants that Plaintiff has solely chosen the forum that would give him a strategic advantage of being as far from the available evidence and Defendants' places of business as possible. The Court does not so conclude. As stated above, Plaintiff has stated that several witnesses are located in Kansas, and the contract required at least partial performance in Kansas. Plaintiff has essentially stepped into the shoes of Ryan, and Ryan entered and performed its contractual obligations in Kansas. Defendants were required to make payments and send written correspondence to Wichita, Kansas. Finally, Defendants' employees traveled to Wichita several times a year to meet with representatives of Ryan concerning the contract. Defendants have not identified why the forum state of Wisconsin would have a higher interest in the dispute as either Kansas or Wisconsin will have to apply New York law to the agreement as the Charter Agreement's choice of law provision is New York.

Defendants have not established a compelling case that personal jurisdiction would be unreasonable. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

**B. Change of Venue**

Defendants alternatively seek a change in venue asserting that the Eastern District of Wisconsin will permit a more just, efficient, and cost-effective resolution of Plaintiff's claims. Motions to transfer venue are governed by 28 U.S.C. § 1404. The statute provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[27] The party moving to

---

[27] 28 U.S.C. § 1404(a).

transfer under § 1404(a), as Defendants have done in this case, bears the burden of showing that the current forum is inconvenient.[28] "Unless the balance is strong in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."[29]

In evaluating whether to transfer venue, the court should consider (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.[30]

Plaintiff's forum choice is Wichita. Although Plaintiff is not a resident of Kansas and is not entitled to as much deference, a non-resident's forum choice is still entitled to some deference.[31] Accordingly, the Court will give Plaintiff some deference to his choice of forum.

With respect to the second factor, some of the relevant witnesses will be from non-party Ryan. "Convenience of the non-party witnesses is the most important factor to be considered."[32]

---

[28]*Thermal Components*, 98 F. Supp. 2d at 1232 (citing *Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1516 (10th Cir. 1991)). Had Defendants brought a motion to dismiss pursuant to 12(b)(3), it would have been Plaintiff's burden to establish proper venue. *See Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998). However, Defendants seek transfer pursuant to 28 U.S.C. § 1404(a).

[29]*Thermal Components*, 98 F. Supp. 2d at 1232 (citing *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

[30]*Chrysler Credit Corp.*, 928 F.2d at 1516.

[31]*Gshwind v. Cessna Aircraft Co.*, 161 F.3d 602, 608 (10th Cir. 1998).

[32]*Meek & Assocs., Inc. v. First Union Ins. Group*, 2001 WL 58839, at *2 (D. Kan. Jan. 18, 2001).

"Where a movant argues the necessity of a witness, the movant must show some factual basis that the witness's testimony is relevant and material, that the witness is unwilling to come to trial, that deposition testimony would be inadequate, or that compulsory process would be useful."[33] Defendants contend that most witnesses will be located at Ryan's principal place of business in Rockford, Illinois which is within the subpoena range of the Eastern District of Wisconsin. Defendants, however, have not identified any of these witnesses, that the witnesses are unwilling to come to trial, or that deposition testimony would be inadequate. Defendants have identified several former employees of Mark Travel that reside in Wisconsin. Plaintiffs, however, have stated that they will travel to Wisconsin to take the depositions of Defendants' employees in Wisconsin. Presumably, Plaintiffs could take the depositions of the former employees at the same time. The Court concludes that this factor weighs only slightly in favor of Defendants.

The remaining factors appear to be comparatively equal. As stated above, neither Wisconsin nor Kansas will be applying their state law as they will be required to apply New York law. Defendants have not met their burden in establishing that the balance of the factors are strongly in their favor. As such, they have not demonstrated that the existing forum is inconvenient.

**IT IS ACCORDINGLY ORDERED** this 17th day of November, 2009 that Defendants' Motion to Dismiss, or in the alternative, for Transfer (Doc. 14) is hereby denied.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[33] *Id.*