# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DR. GERHARD WALTER, AS THE
INSOLVENCY ADMINISTRATOR OF
THE ESTATE OF AERO LLOYD
FLUGREISEN GMBH & CO
LUFTBERKEHRS-KG CORPORATION

*Plaintiff*,

vs.

Case No. 09-1019-EFM

THE MARK TRAVEL CORPORATION, a
Nevada Corporation; and TRANS GLOBAL
TOURS, L.L.C., a Minnesota Limited
Liability Company,

*Defendants.*

## MEMORANDUM AND ORDER

Plaintiff is a foreign attorney appointed by a German court to serve as the administrator of

the bankruptcy estate of a German charter airline, Aero Lloyd Flugreisen GmbH & Co Luftverkers-

KG. In 2003, when Aero Lloyd went through the German bankruptcy process, its administrator

settled all outstanding transactions between Aero Lloyd and Ryan International Airlines, Inc. Aero

Lloyd and Ryan entered into an Accord and Release on February 16, 2006 in which Ryan assigned

payment claims it may have had against Mark Travel Corporation and Trans Global Tours to Aero

Lloyd. Now, Plaintiff brings a breach of contract claim against Defendants Mark Travel

Corporation and Trans Global Tours for the money allegedly due to Ryan International Airlines.

Before the Court is Plaintiff's Motion to Compel the Defendants to Arbitration (Doc. 36). The motion has been fully briefed. For the following reasons, the Court grants Plaintiff's motion (Doc. 36). Defendant has also filed a Motion for Leave to File a Surreply (Doc. 51). That motion is denied.

## I. Factual and Procedural Background

Plaintiff Dr. Gerhard Walter is a citizen of Germany and is the Insolvency Administrator of the Estate of Aero Lloyd. Defendants are The Mark Travel Corporation, doing business as Funjet Vacations, and Trans Global Tours, L.L.C ("Trans Global") (hereinafter collectively referred to as "Mark Travel"). Ryan International Airlines, Inc. ("Ryan") is a corporation incorporated in Kansas which had its principal place of business in Wichita, Kansas through 2006. Ryan remains incorporated under Kansas law, but in 2006, Ryan moved its principal offices to Rockford, Illinois.

This case involves a series of contracts between Aero Lloyd and Mark Travel, Aero Lloyd and Ryan, and Mark Travel and Ryan. Aero Lloyd was engaged in the business of purchasing, owning, leasing, operating, and selling aircraft. Ryan was engaged in the business of leasing, operating, and chartering aircraft. Mark Travel charters aircraft from aircraft operators for the purpose of providing and selling vacation packages to consumers.

In June of 2002, Aero Lloyd and Mark Travel entered into a letter agreement. Under this agreement, Aero Lloyd would lease six aircraft to Ryan under written lease agreements, and Mark Travel would charter the six aircraft from Ryan under written charter agreements for flights for up to three years (the "Mark Travel Letter Agreement"). The Mark Travel Letter Agreement references and defines the Charter Agreement between Mark Travel and Ryan on page 1. In Paragraph 2 of the Mark Travel Letter Agreement, it states that "[c]harterer shall not amend, modify or consent to

the amendment or modification of any term or provision in the Charter Agreement in any manner or alter, add to, decrease, or modify the flights or number of flights shown on Schedule A to the Charter Agreement without the timely prior written consent of Aero Lloyd." Paragraph 2 also provides "[n]otwithstanding the above, and for the avoidance of doubt of Aero Lloyd shall have no liability or obligations of any type whatsoever to the Charterer under the Charter Agreement and Charterer shall look solely to Ryan for any obligations, duties or responsibilities which are not required to be performed by the Charterer under the Charter Agreement. Furthermore, the Charterer shall have no liability to Aero Lloyd for any breech or failure of Ryan or the Operator under the Charter Agreement."

The Mark Travel Letter Agreement had the following provision relating to applicable law and arbitration:

> 7. <u>Applicable Law</u>. This Agreement and the rights and duties of the parties hereunder, including matters to be arbitrated, insofar as is permissible under any applicable law, will in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance.

On or about June 14, 2002, Mark Travel and Ryan entered into an aircraft charter agreement for six aircraft for the First Season (the "2002-2003 Charter Agreement"). The 2002-2003 Charter Agreement provides that the agreement will be interpreted in accordance with the laws of the State of New York. It also contains a provision regarding dispute resolution.

Article 13.1 states:

> In the event of a controversy between the parties arising out of or relating to this Agreement, or the performance thereof, the following shall apply:

> A. The parties shall at all times exercise good faith and attempt to resolve the dispute.

B. The dispute shall be referred by either party by notice to the other, to the chief executive officers of the parties who shall in good faith endeavor to resolve the dispute within twenty-one (21) days.

C. If the chief executive officers have not resolved the dispute within that time period, either party, by notice to the other, may cause the dispute to be mediated. Within ten (10) days following this notice, the chief executive officers shall endeavor to jointly select a mediator who shall establish a mediation process which the parties shall follow.

D. If the chief executive officers are unable to jointly select a mediator within the time period or if the mediator determines that mediation is deadlocked, the dispute shall by determined by arbitration in accordance with the rules then in force of The American Arbitration Association, and judgment on the award rendered may be entered in any court having jurisdiction over the parties.

Around July 2002, Aero Lloyd and Ryan entered into a letter agreement. This agreement provided that Aero Lloyd would lease six aircraft to Ryan under written lease agreements, and Mark Travel would charter the six aircraft from Ryan under written charter agreements for flights for up to three years (the "Ryan Letter Agreement"). This agreement also contained a recital defining the Charter Agreement between Mark Travel and Ryan, a provision that Aero Lloyd was not a party to the Charter Agreement between Mark Travel and Ryan, and a provision that Aero Lloyd and Ryan would have no liability to each other pursuant to a breech of the Charter Agreement.

Ryan completed and performed its responsibilities under the 2002-2003 Charter Agreement. Plaintiff alleges that Mark Travel breached the 2002-2003 Charter Agreement by failing to make all payments.

In or about September 2003, Mark Travel and Ryan entered into an aircraft charter agreement for six aircraft for the second season (the "2003-2004 Charter Agreement"). The 2003-2004 Charter Agreement between Mark Travel and Ryan contained the same choice of law and dispute resolution provisions as the 2002-2003 Charter Agreement. In or about November and

December 2003, Aero Lloyd and Ryan entered into aircraft lease agreements for six aircraft to be chartered by Ryan to Mark Travel under the 2003-2004 Charter Agreement (the "2003-2004 Lease Agreement"). Aero Lloyd alleges that Mark Travel failed to utilize, fly and pay for the guaranteed stated block hours for the aircraft under the 2003-2004 Charter Agreement.

Aero Lloyd filed for bankruptcy in Germany on October 16, 2003. On December 17, 2003, Aero Lloyd was adjudged bankrupt and since then, Aero Lloyd has been under the administration of Dr. Gerhard Walter in his capacity as Insolvency Administrator. Aero Lloyd alleges that the amounts due from Mark Travel to Ryan were for the ultimate benefit of Aero Lloyd under the lease agreements between Aero Lloyd and Ryan. Aero Lloyd made claim against Ryan for those amounts.

To resolve the dispute, Aero Lloyd and Ryan entered into an Accord and Release, dated February 16, 2005. Pursuant to the Accord and Release, Ryan assigned to the Insolvency Administrator any payment claims Ryan had against Mark Travel. It states:

> 5. Mark Travel Dispute. In accordance with the Agreements, Ryan entered into (i) that certain Charter Agreement dated June 14, 2002 between Ryan and The Mark Travel Corporation d/b/a/ FunJet Vacations and Trans Global Tours, LLC (collectively, "Mark Travel") and (ii) that certain Charter Agreement dated September 13, 2003 between Ryan and Mark Travel (the "Mark Agreements"). Aero Lloyd alleges that amounts are due from Mark Travel to Ryan pursuant to the Mark Agreements which would be for the ultimate benefit of Aero Lloyd under the Agreements ("Payment Claims") which have not been paid to Ryan by Mark Travel as of the date hereof. Aero Lloyd has made claim against Ryan for those amounts and has demanded that Ryan pursue collection efforts against Mark Travel for those amounts. Ryan believes that no Payment Claims are due and that collection efforts would damage its business relationship with Mark Travel. In order to avoid litigation on this issue between Aero Lloyd and Ryan and facilitate the Accord and Release granted herein, Ryan hereby assigns to the Administrator and the Administrator hereby accepts assignment from Ryan, any Payment Claims Ryan may have and Ryan agrees that any amounts which it might receive for any Payment Claims shall be promptly transferred to the Administrator. Ryan shall reasonably cooperate with the Administrator in its pursuit of any Payment Claims and such cooperation shall include but shall not be limited to, the production of documents and witnesses as may be required by the Administrator. The Administrator shall pay any

out of pocket expenses incurred by Ryan in furnishing this cooperation. It also contained a choice of law provision stating that the Accord and Release shall in all respects be governed by the Laws of the State of New York.

Aero Lloyd previously attempted to resolve the dispute over the Payment Claims under the Charter Agreements by letters dated August 4, 2004, September 1, 2004, August 8, 2005, and May 30, 2008. By letter dated November 21, 2008, Aero Lloyd made a formal demand that the dispute over the Payment Claims be referred to the chief executive officers of Aero Lloyd and Mark Travel under the dispute resolution provisions in the Charter Agreements. Aero Lloyd advised Mark Travel "that if the chief executive officers have not resolved the dispute over the Payment Claims within the time period set forth in the Charter Agreements, Aero Lloyd intends to cause the dispute to be mediated, and if necessary, arbitrated and/or litigated."

On November 28, 2008, Aero Lloyd advised Mark Travel's in-house counsel that Aero Lloyd would like to meet the contract deadlines for dispute resolution. Aero Lloyd also suggested an agreement by the parties to toll the statute of limitations from the date of the demand. On December 9, 2008, Aero Lloyd again requested Mark Travel's response to Aero Lloyd's demand for dispute resolution.

After several letters, emails, and phone conversations, Mark Travel offered to enter into a short tolling agreement as to the statute of limitations upon the condition that should litigation ensue, it would take place in the United States District Court for the Eastern District of Wisconsin.[1] On January 29, 2009, Aero Lloyd filed its lawsuit in the District of Kansas seeking to recover the Payment Claims, or in the alternative, requesting the Court to enter an order compelling Mark Travel

---

[1]Aero Lloyd contends that Mark Travel's offer to toll the statute of limitations required Aero Lloyd to waive its arbitration rights.

to submit to arbitration. Mark Travel filed a lawsuit one day later in the Eastern District of Wisconsin seeking a declaratory judgment that it had no financial obligation to Aero Lloyd and that Aero Lloyd's claims were without merit.

Mark Travel filed a motion to dismiss in the District of Kansas on March 19, 2009 arguing that it was not subject to personal jurisdiction in Kansas, or in the alternative, a motion to transfer the action to the Eastern District of Wisconsin. On the same date, Mark Travel filed a motion to stay discovery. The Court stayed discovery pending a ruling on Mark Travel's motion to dismiss except for limited discovery on general jurisdiction issues. In Aero Lloyd's response to Mark Travel's motion to dismiss, it asserted as an alternative to transfer to the Eastern District of Wisconsin that the Court compel the parties to arbitration.[2]

On November 17, 2009, the Court denied Mark Travel's motion to dismiss, or in the alternative, a motion to transfer.[3] On November 19, 2009, the Court entered a Case Management Order requiring the parties to confer and submit their Fed. R. Civ. P. 26(f) planning report by November 30, 2009. Mark Travel filed its Answer to the Complaint on December 2, 2009, and six days later on December 8, 2009, Aero Lloyd filed its Motion to Compel Defendants to Arbitration. Plaintiff contends that Defendant is required to arbitrate the payment claims dispute under the Charter Agreement, the Accord and Release, and the Mark Travel Letter Agreement.

---

[2]Aero Lloyd also filed a motion to dismiss, to stay proceedings, or in the alternative to compel arbitration in the Eastern District of Wisconsin case.

[3]Doc. 31. Subsequent to this Court's Order, the Eastern District of Wisconsin dismissed the case filed by Mark Travel against Aero Lloyd in that jurisdiction.

## II. Analysis

### A. Choice of Law

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits.[4] "Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement."[5] In the Mark Travel Letter Agreement between Mark Travel and Aero Lloyd, the Accord and Release between Aero Lloyd and Ryan, and the Charter Agreements between Mark Travel and Ryan, there are provisions in each stating that the applicable law is New York. As such, the Court will look to the underlying New York substantive law with respect to contracts.

### B. Arbitration Agreement

Plaintiff asserts that it is entitled to compel arbitration against the Defendants as a party to the Mark Travel Letter Agreement, as an assignee of the Payment Claims under the Charter Agreements, by incorporation by reference of the Charter Agreements into the Mark Travel Letter Agreement, and as a third party beneficiary of the Charter Agreements under the Mark Travel Letter Agreement and the Ryan Letter Agreement.

Arbitration agreements are governed by the Federal Arbitration Act (FAA). "Section 3 of the Act, 9 U.S.C. § 3, obliges courts to stay litigation on matters that the parties have agreed to arbitrate; and Section 4, 9 U.S.C. § 4, authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute."[6] 9 U.S.C. § 3 states:

---

[4]*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[5]*Brenner v. Oppenheimer & Co., Inc.*, 273 Kan. 525, 539, 44 P.3d 364, 375 (2002); *see also Key Constr. Inc. v. State Auto Prop. & Cas. Ins. Co.*, 551 F. Supp. 2d 1266, 1269 (D. Kan. 2008).

[6]*Hill v. Ricoh Americas Corp.*, — F.3d —, 2010 WL 1530786, at *2 (10th Cir. Apr. 19, 2010) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 4 provides in part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

There is a strong federal policy of favoring arbitration agreements but only to disputes that parties have agreed to arbitrate.[7] "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."[8] Although the court looks to federal substantive law, it also looks to "background principles of state contract law" in determining the scope of the

---

[7] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985).

[8] *Id.* at 626 (internal quotations and citations omitted).

agreement.[9]

In a very recent United States Supreme Court opinion, the court noted that arbitration is a matter of contract between parties, and "parties may specify *with whom* they choose to arbitrate their disputes."[10] "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'"[11] The United States Supreme Court, however, also emphasized just last year in *Arthur Andersen* that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"[12]

Indeed, the Court of Appeals for the Second Circuit, in addressing a New York case, has specifically "recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel."[13] New York law also recognizes that assignees of contracts with arbitration clauses may become parties to such provisions.[14]

---

[9]*Arthur Andersen LLP v. Carlisle*, — U.S. —, 129 S.Ct. 1896, 1902 (2009).

[10]*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, — S. Ct. —, 2010 WL 1655826, at *12 (Apr. 27, 2010) (emphasis in original).

[11]*Id.* at *11 (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 498 U.S. 468, 479 (1989)).

[12]*Arthur Andersen*, 129 S.Ct. at 1902 (citing 21 R. Lord, Williston on Contracts § 57.19, p. 183 (4th ed. 2001)).

[13]*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).

[14]*Cedrela Transport Ltd. v. Banque Cantonele Vaudoise*, 67 F. Supp. 2d 353, 354-55 (S.D.N.Y. 1999) (citing *Fisser v. Int'l Bank*, 282 F.2d 231, 241 n. 6 (2d Cir. 1960) (noting that "assignees of contracts containing arbitration provisions may become parties to such provisions."); *Certain Underwriters at Lloyd's London v. Colonial Penn Insurance Co.*, No. 97 Civ. 767, 1997 WL 316459 at *2 (S.D.N.Y. June 11, 1997) (Patterson, J.) (holding that assignee of an agreement that contained an arbitration provision had the right to compel a party to that agreement to submit to arbitration where the assignment assigned "all of [the assignor's] rights" under the

Aero Lloyd states that the assignment of the Payment Claims from Ryan to Aero Lloyd under the Accord and Release includes the right to arbitration under the Charter Agreements because the Payment Claims are within the scope of the dispute resolution provisions of the Charter Agreements. Aero Lloyd contends that as assignee, it stands in the shoes of the assignor. In addition, Aero Lloyd relies on New York law which provides:

> Where a claim or demand can be transferred, the transfer thereof passes an interest, which the transferee may enforce by an action or special proceeding, or interpose as a defense or counter-claim, in his own name, as the transferee might have done; subject to any defense or counter-claim, existing against the transferee, before notice of the transfer, or against the transferee. But this section does not apply, where the rights or liabilities of a party to a claim or demand, which is transferred, are regulated by special provision of law; nor does it vary the rights or liabilities of a party to a negotiable instrument, which is transferred.[15]

Mark Travel asserts that the Accord and Release between Ryan and Aero Lloyd did not assign the Charter Agreement but rather only assigned "Payment Claims." Mark Travel contends that Aero Lloyd only received the limited and specific right to pursue payment from Mark Travel and not the right to compel arbitration, and the contractual dispute resolution provision in the Charter Agreement is specific to Ryan and Mark Travel and reflects their intent that arbitration only proceed with respect to Ryan and Mark Travel. Accordingly, Mark Travel states that Aero Lloyd, as a nonparty to the Charter Agreement, has no contractual right to compel it to arbitration.

---

agreement); *cf. Banque De Paris et des Pays-Bas v. Amoco Oil Co.,* 573 F. Supp. 1464, 1469 (S.D.N.Y. 1983) ("Were Paribas an assignee of the contract between Amoco and Quasar, it would no doubt be required to arbitrate this dispute"); *Wells Fargo Bank Int'l Corp. v. London Steam-Ship Owners' Mutual,* 408 F.Supp. 626, 629 (S.D.N.Y. 1976) (recognizing that assignees have been held to arbitration agreements to which they were nonsignatories))).

[15]McKinney's General Obligations Law, Section 13-105.

The 2002-2003 Charter Agreement between Mark Travel and Ryan provides that it should be interpreted pursuant to the laws of New York. New York recognizes that assignees of contracts containing arbitration provisions may be entitled to compel signatories to those agreements to submit to arbitration.[16]

Here, the Accord and Release between Aero Lloyd and Ryan provides that Aero Lloyd has been assigned any payment claims Ryan may have against Mark Travel. It also provides that Ryan shall reasonably cooperate with Aero Lloyd in Aero Lloyd's pursuit of the Payment Claims. Although Mark Travel contends that Aero Lloyd is not a specific party to the contract between Mark Travel and Ryan, Aero Lloyd stands in the shoes of Ryan and is essentially asserting Ryan's claim against Mark Travel for payment allegedly due under their contract.[17] If Ryan were bringing its payment claim against Mark Travel, it would be required to follow the dispute resolution provision in the Charter Agreement. Aero Lloyd is not an unrelated nonparty to this case but is instead pursuing payment claims *on Ryan's behalf* because it has been assigned any payment claims Ryan may have had. Mark Travel would be obligated to proceed to arbitration with Ryan with respect to these payment claims, and is obligated to proceed to arbitration with Aero Lloyd, as assignee of these payment claims. As such, it appears that Aero Lloyd, as assignee of Ryan's right to pursue payment from Mark Travel, is entitled to compel Mark Travel to arbitration.[18]

---

[16]*Cedrela,* 67 F. Supp. 2d at 354-55.

[17]The Court recognizes that Ryan states it does not believe that payments are due but this does not change the fact that the dispute is about payment allegedly due to Ryan pursuant to the contract. Ryan entered into the Accord and Release with Aero Lloyd in which Ryan specifically assigns the payment claims to Aero Lloyd.

[18]Because the Court has determined that Aero Lloyd, through assumption, can compel Mark Travel to arbitration, it will not address Aero Lloyd's additional arguments regarding incorporation by reference and its third-party beneficiary status.

## C. Waiver of the Right to Arbitration

Mark Travel asserts that even if there is an applicable arbitration agreement, Aero Lloyd has waived its right to arbitrate. The Tenth Circuit recently addressed whether a party waived its right to compel arbitration.[19] The factors helpful in making this assessment include:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.[20]

However, the listing of these factors "was not intended to suggest a mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails."[21] "[T]hese factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration."[22] Whether a waiver has occurred depends on the facts of each case.[23]

"The burden of persuasion lies with the party claiming that the right to demand arbitration has been waived."[24] In determining whether that burden has been met, the Court should give

---

[19]*Hill v. Ricoh Americas Corp.*, — F.3d —, 2010 WL 1530786 (10th Cir. Apr. 19, 2010).

[20]*Id.* at *4 (citations omitted).

[21]*Id.*

[22]*Id.*

[23]*Id.* at *3.

[24]*Id.* at *6 (citation omitted).

substantial weight to the strong federal policy of encouraging resolving disputes through arbitration.[25]

Mark Travel contends that because Aero Lloyd filed a lawsuit instead of unilaterally initiating arbitration that Aero Lloyd's actions are inconsistent with the right to arbitrate. The dispute resolution provision in the contract states that after certain steps have been performed and the chief executive officers are unable to select a mediator or the mediator determines that mediation is deadlocked, "the dispute shall be determined by arbitration in accordance with the rules then in force of The American Arbitration Association . . . ." Mark Travel asserts that the arbitration provision, therefore, specifically incorporates the rules of the American Arbitration Association.[26] Mark Travel contends that Aero Lloyd, at any point over the last several years, could have attempted to initiate arbitration pursuant to the AAA's rules.[27]

Mark Travel relies on a District of Kansas case, *Entech Systems, Inc. v. Bhaskar,*[28] for the proposition that because Aero Lloyd initiated litigation, its actions are inconsistent with its right to arbitrate. However, in that case, the Court noted that "under the unique circumstances of this case," the plaintiff had waived the right to arbitrate.[29] The Court found that plaintiff's actions were inconsistent with the assertion of the right to arbitrate, one reason being that plaintiffs had initiated

---

[25]*Id.* (citations omitted).

[26]Mark Travel states that Commercial Arbitration Rule R-4 specifies how arbitration is to be initiated and requires that copies of the claim and the relevant arbitration provision are to be filed with the AAA and copies provided to the other party which then starts a fifteen-day clock to respond.

[27]With respect to Mark Travel's contention that Aero Lloyd could have unilaterally initiated arbitration, Aero Lloyd appears to have followed the steps outlined in the dispute resolution provision. When Aero Lloyd requested arbitration, Mark Travel also could have agreed to it.

[28]1998 WL 164632 (D. Kan. Mar. 18, 1998).

[29]*Id.* at *7.

the lawsuit.[30] There were additional factors, however, including the fact that defendants had already consented to a Court order requiring defendants to relinquish control over certain materials "under the assumption that the dispute would be resolved in this court."[31] The Court found that plaintiff's posture was inconsistent with arbitration because "it clearly intended to litigate the entirety of its claims in this court" by requesting actual and punitive damages, as well as a jury trial.[32]

The Tenth Circuit has instructed courts to perform a case specific inquiry as to whether a party has waived arbitration, and the Court finds the recent Tenth Circuit opinion instructive. Although Aero Lloyd initiated the lawsuit, Aero Lloyd requested Mark Travel to engage in arbitration before it filed the lawsuit. Aero Lloyd asserted its request for arbitration in its complaint, in its response to Defendant's motion to dismiss, in a motion to the Eastern District of Wisconsin, and in the instant motion before the Court. Although Aero Lloyd requested a jury trial in its complaint, it also requested the Court to enter an order compelling Mark Travel to submit to arbitration. It is not clear to the Court that Aero Lloyd intended to litigate the entirety of its claims with this Court, and the Court does not find that Aero Lloyd's actions are inconsistent with its right to arbitrate.

---

[30]*Id.*

[31]*Id.*

[32]*Id.*

In addition, although Mark Travel contends that Aero Lloyd "vigorously" litigated before the Court for almost a year before filing its motion to compel arbitration and a substantial amount of litigation has ensued, most of the activity on behalf of Aero Lloyd occurred as a response to Mark Travel's filings. Aero Lloyd filed its complaint on January 29, 2009. As noted above, in its complaint, it sought in its Prayer for Relief the Court to compel Mark Travel to submit to arbitration pursuant to the dispute resolution provisions. On March 19, 2009, Mark Travel filed both a motion to dismiss for lack of jurisdiction and a motion to stay discovery. Aero Lloyd opposed both motions. The Court granted Mark Travel's motion to stay discovery with the exception of limited discovery by Aero Lloyd on general jurisdiction issues. On August 19, 2009, the Court extended the discovery stay pending a ruling on the motion to dismiss. On November 17, 2009, this Court entered its Order denying Mark Travel's Motion to Dismiss, or in the Alternative to Transfer. Within three weeks of the Court issuing its Order, Mark Travel filed its answer. Six days later, on December 8, 2009, Aero Lloyd moved to compel arbitration.

In *Hill*, the Tenth Circuit noted that "[t]he critical question is what was happening in this litigation during the four months between the answer to the complaint and the demand for arbitration."[33] It concluded that "very little" occurred and the only discovery that had occurred was a request for production of documents and the parties' initial disclosures under Fed. R. Civ. P. 26(a)(1).[34] The Tenth Circuit found that defendant "failed to show any substantial prejudice from the [ ] delay in seeking arbitration."[35]

---

[33]*Hill*, 2010 WL 1530786, at *7.

[34]*Id.*

[35]*Id.*

Similarly, here, very little was occurring. Although more time has elapsed, the proceedings primarily relate to briefing Mark Travel's motion to dismiss and motion to stay discovery.[36] The motion to dismiss required the Court to determine if Mark Travel was subject to personal jurisdiction in the District of Kansas. Once the Court denied the motion to dismiss and found that Mark Travel was subject to personal jurisdiction, Mark Travel filed its answer to the complaint. Aero Lloyd filed its motion to compel arbitration six days later.

Finally, Mark Travel contends that it is prejudiced because it has expended substantial time and money litigating issues that would not have been necessary had Aero Lloyd initiated arbitration before filing its complaint, and it has provided its Fed. R. Civ. P. 26(a)(1) initial disclosures. This is not a case where Mark Travel was taken by surprise by the request for arbitration. Prior to the filing of the lawsuit, Aero Lloyd requested that Mark Travel engage in arbitration. It appears that only after the parties reached an impasse that Aero Lloyd filed the instant lawsuit. Mark Travel then filed several motions and an additional lawsuit in the Eastern District of Wisconsin.

Furthermore, with respect to initial disclosures, as the Tenth Circuit noted in *Hill*, arbitration rules would allow the arbitrator to order discovery and would require the parties to exchange such information as witnesses and exhibits.[37] The Tenth Circuit found that providing initial disclosures under Fed. R. Civ P. 26(a)(1) was not substantially prejudicial.[38] Although the dispute in *Hill*

---

[36]The Tenth Circuit "has no published opinion ruling that there was waiver because of the delay in making a demand for arbitration when the delay was four months or less after the answer." *Id.*

[37]*Id* (citing AAA, Employment Arbitration Rules and Mediation Procedures, Rule 8(e) and 9 (2006)). Although the dispute in *Hill* apparently implicates employment arbitration procedures, rather than commercial arbitration procedures, Plaintiff has pointed out that AAA Rule R-21, as well as Rules L-3 and L-4 applicable to commercial disputes, contemplates the exchange of information including identification of witnesses and exchange of documents and exhibits. Plaintiff contends that this is similar to the information provided in initial disclosures.

[38]*Id.*

apparently implicated employment arbitration procedures, rather than commercial arbitration procedures, Plaintiff has pointed out that the American Arbitration Association Rule R-21, as well as Rules L-3 and L-4 applicable to commercial disputes, contemplates the exchange of information including identification of witnesses and exchange of documents and exhibits. Plaintiff contends that this is similar to the information provided in initial disclosures. Here, Mark Travel does not appear to have shown any substantial prejudice and has not met its burden in demonstrating that Aero Lloyd waived its right to arbitration.

**IT IS ACCORDINGLY ORDERED** this 17th day of May, 2010 that Plaintiff's Motion to Compel Defendants to Arbitration (Doc. 36) is hereby granted.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File a Surreply (Doc. 51) is hereby denied.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE