IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SASCHA WALTER, AS THE
INSOLVENCY ADMINISTRATOR OF
THE ESTATE OF AERO LLOYD
FLUGREISEN GMBH & CO
LUFTBERKEHRS-KG CORPORATION,

*Plaintiff,*

vs.

Case No. 09-1019-EFM

THE MARK TRAVEL CORPORATION, a
Nevada Corporation; and TRANS GLOBAL
TOURS, L.L.C., a Minnesota Limited
Liability Company,

*Defendants.*

**MEMORANDUM AND ORDER**

Plaintiff Sascha Walter was appointed by a German court to serve as the administrator of the bankruptcy estate of a German charter airline, Aero Lloyd Flugreisen GmbH & Co Luftverkers-KG. In 2003, Aero Lloyd went through the German bankruptcy process and its administrator settled all outstanding transactions between Aero Lloyd and Ryan International Airlines, Inc. Aero Lloyd and Ryan later entered into an Accord and Release in which Ryan assigned any payment claims Ryan might have had against Mark Travel Corporation and Trans Global Tours. Plaintiff brought a breach of contract claim against Defendants Mark Travel Corporation and Trans Global Tours for the money allegedly due to Ryan International Airlines.

The Court ordered the Defendants to submit to arbitration with Plaintiff. The arbitrators awarded Plaintiff $1,132,338.00 for the recoverable payment claims.

This matter is before the Court on two motions relating to the arbitration award. Plaintiff moves to confirm the award, and Defendants move to vacate the award. For the following reasons, the Court denies Defendants' Motion to Vacate the Arbitration Award (Doc. 63) and grants Plaintiff's Motion to Enforce the Arbitration Award (Doc. 68).

**I.     Factual and Procedural Background**

Plaintiff Sascha Walter is a citizen of Germany and is the successor Insolvency Administrator of the Estate of Aero Lloyd ("Aero Lloyd").[1] Defendants are The Mark Travel Corporation, doing business as Funjet Vacations, and Trans Global Tours, L.L.C. (collectively referred to as "Mark Travel"). Ryan International Airlines, Inc. ("Ryan") is a corporation incorporated in Kansas. Ryan's principal place of business was originally in Wichita, Kansas. Ryan moved its principal offices to Rockford, Illinois, in 2006 but remains incorporated in Kansas.

This case involves a series of leases, charter agreements, and letter agreements. Pursuant to the agreements, Aero Lloyd supplied European aircraft to Ryan, Ryan operated the aircraft with crews and maintenance personnel, and Mark Travel supplied passengers and the initial revenue stream. Mark Travel collected revenue and paid Ryan based on Ryan's calculation of the number of hours flown by the aircraft, and Ryan covered its expenses for operating the airplanes and retained a fixed fee. Ryan would then pay the balance leftover to Aero Lloyd. The

---

[1] Dr. Gerhard Walter was the original Insolvency Administrator of the Estate. After Dr. Walter's death, Sascha Walter was appointed the successor Insolvency Administrator of the Estate. *See* Amended Complaint, Doc. 80, at 2.

parties structured the three-party arrangement by drafting leases between Aero Lloyd and Ryan, charter agreements between Mark Travel and Ryan, and letter agreements between Aero Lloyd and Ryan and between Aero Lloyd and Mark Travel.

In June 2002, Ryan and Mark Travel signed a charter agreement for six seasonal aircraft. Under the charter agreement, each aircraft was required to fly a minimum number of hours. If Mark Travel did not schedule the required minimum number of hours, Mark Travel was liable to Ryan for the difference between the required number of hours and the hours actually flown ("shortfall hours"). The charter agreement provided that the agreement would be governed by the laws of the State of New York and contained the following dispute resolution provision:

> In the event of a controversy between the parties arising out of or relating to this Agreement, or the performance thereof, the following shall apply:
>
> A. The parties shall at all times exercise good faith and attempt to resolve the dispute.
>
> B. The dispute shall be referred by either party by notice to the other, to the chief executive officers of the parties who shall in good faith endeavor to resolve the dispute within twenty-one (21) days.
>
> C. If the chief executive officers have not resolved the dispute within that time period, either party, by notice to the other, may cause the dispute to be mediated. Within ten (10) days following this notice, the chief executive officers shall endeavor to jointly select a mediator who shall establish a mediation process which the parties shall follow.
>
> D. If the chief executive officers are unable to jointly select a mediator within the time period or if the mediator determines that the mediation is deadlocked, the dispute shall be determined by arbitration in accordance with the rules then in force of The American Arbitration Association, and judgment on the award rendered may be entered in any court having jurisdiction over the parties.

During this time, Aero Lloyd and Mark Travel entered into a letter agreement. Under the letter agreement, Aero Lloyd would lease six aircraft to Ryan under written lease agreements, and Mark Travel would charter the six aircraft from Ryan under a charter agreement. The letter agreement also provided that Mark Travel would not change the terms of its charter agreement

with Ryan without Aero Lloyd's advance written consent and that Mark Travel would have "no liability to Aero Lloyd for any breach or failure of Ryan or the Operator under the Charter Agreement." Aero Lloyd signed a similar letter agreement with Ryan.

In April 2003, Aero Lloyd and Mark Travel signed another letter agreement for a single aircraft to operate in the United States year-round from June 2003 through May 2004. The letter agreement for the year-round plane also provided that Mark Travel would not change the terms of the year-round charter agreement without the prior consent of Aero Lloyd. Mark Travel and Ryan signed a charter agreement for the year-round plane.

In September 2003, the parties made arrangements for the second year of the seasonal aircraft. Ryan and Mark Travel executed a charter agreement for the use of six aircraft based at five different cities. This charter agreement contained the same choice of law and dispute resolution provision as the earlier charter agreements.

In October 2003, Aero Lloyd filed preliminary insolvency proceedings in Germany, and on December 17, 2003, Aero Lloyd was adjudged bankrupt and was placed under the administration of Dr. Gerhard Walter in his capacity as Insolvency Administrator. Mark Travel and Ryan were concerned about whether the airplanes they were expecting for the November 2003 winter season would be delivered. Because of these concerns, Mark Travel emailed Mallachy Corrigan, who was Aero Lloyd's representative in the United States and had been involved in the discussions surrounding the agreements. Mark Travel and Ryan considered Corrigan to be the "voice of Aero Lloyd" in the United States. Aero Lloyd ultimately fulfilled its obligations for the seasonal airplanes but called the year-round airplane back to Germany in April 2004.

Following the callback of the year-round plane, Aero Lloyd alleged that Mark Travel owed Ryan money under the charter agreements for shortfall hours and that the amounts due were for the ultimate benefit of Aero Lloyd under its lease with Ryan. Aero Lloyd made claim against Ryan for the shortfall hours, and Ryan and Aero Lloyd entered into an Accord and Release. In the Accord and Release, Ryan stated that it believed Mark Travel did not owe Ryan payment claims and that collection efforts would damages Ryan's business relationship with Mark Travel. Ryan nonetheless assigned to Aero Lloyd's Insolvency Administrator any payment claims Ryan had against Mark Travel. The Accord and Release also contained a choice of law provision stating that it would in all respects be governed by the laws of the State of New York.

After Aero Lloyd's attempts to follow the charter agreements' dispute resolution provision failed, Aero Lloyd filed a lawsuit in January 2009 in the District of Kansas seeking to recover payment claims from Mark Travel, or in the alternative, requesting that the Court enter an order compelling Mark Travel to submit to arbitration. In December 2009, the Court denied Mark Travel's motion to dismiss the complaint, or in the alternative, transfer the case to the Eastern District of Wisconsin, and in May 2010, the Court granted Aero Lloyd's motion to compel discovery. Because Aero Lloyd is a European entity, the American Arbitration Association referred the matter to the International Centre for Dispute Resolution ("ICDR"). The ICDR panel held a seven-day evidentiary hearing and issued an award on October 24, 2012.

In the award, the ICDR panel found that the shortfall hours claims were valid, were assigned properly to Aero Lloyd, and could be asserted by Aero Lloyd against Mark Travel. The panel also found that the alleged oral agreements Mark Travel claimed reduced its liability for shortfall hours were not valid. The panel concluded that Ryan would have prevailed (and thus

Aero Lloyd prevailed) on the claims for shortfall hours for two seasonal aircraft. The panel awarded $558,350 for the seasonal Detroit A320 plane, $92,325.00 for the seasonal St. Louis A320 planed, and $481,663 in interest. Altogether, the panel awarded Aero Lloyd $1,132,338 for the recoverable shortfall hours. The panel rejected Aero Lloyd's claim regarding the shortfall hours of the year-round plane.

On January 23, 2013, Mark Travel filed a Motion to Vacate Arbitration Award (Doc. 63), and on February 22, 2013, Aero Lloyd filed a Motion to Enforce Arbitration Award (Doc. 68). The matters are fully briefed and the Court is now prepared to rule.

## II. Legal Standard

The Federal Arbitration Act ("FAA") governs this proceeding. Under the FAA, a party to an arbitration agreement may move to have a court enter an order confirming the award "if the parties in their agreement have agreed that a judgment of the Court shall be entered upon the award made pursuant to the arbitration."[2] The Court must grant the motion to confirm the award unless the award has been vacated, modified, or corrected.[3]

Section 10 of the FAA provides four statutory circumstances in which an arbitration award may be vacated:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

---

[2] 9 U.S.C. § 9 ("If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.").

[3] *Id.*

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[4]

The Tenth Circuit has recognized "a handful of judicially created reasons" for vacating an award, including "violations of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing."[5] "Because of the courts' limited ability to review arbitration awards, their powers of review have been described as among the narrowest known to the law."[6]

### III. Analysis

The dispute resolution provision in the charter agreements provides that "judgment on the award may be entered by any court having jurisdiction over the parties."[7] Aero Lloyd has timely applied for the Court to confirm the arbitration award. Unless Mark Travel demonstrates the award should be vacated, the Court must confirm the award.[8]

Mark Travel argues the arbitration award should be vacated because (1) Mark Travel is not a party to any agreement to arbitrate with Aero Lloyd, (2) Aero Lloyd waived its purported right to arbitrate by filing its lawsuit against Mark Travel, and (3) the arbitrators exceeded their powers and the award was issued in manifest disregard of the law. Aero Lloyd argues, and Mark Travel acknowledges, the Court has already ruled that Aero Lloyd was entitled to compel Mark

---

[4] 9 U.S.C. § 10.

[5] *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (internal quotation marks omitted).

[6] *Denver & Rio Grande Western R. Co. v. Union Pacific R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) (internal quotation marks omitted).

[7] Aircraft Charter Agreement, Doc. 69-6, at 14.

[8] *See Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008) (noting the party seeking to vacate the award has the burden of proving the award should be vacated).

Travel to arbitration and that Aero Lloyd did not waive its right to compel arbitration.[9] Thus, the Court must first determine the proper procedure for addressing the previously ruled upon issues.

**A.      Previously Ruled Upon Issues**

Mark Travel contends that it is permitted to reassert the previously ruled upon issues because they are proper grounds for vacating an arbitration award, and Mark Travel wants to "give the Court the opportunity to revisit them and to preserve them for appeal, if necessary."[10] Mark Travel's request that the Court "revisit" these issues will require the Court to reconsider its Order Compelling Arbitration. Accordingly, the Court will analyze Mark Travel's request to revisit these issues under the rules governing a motion for reconsideration.

In the Tenth Circuit, the law is not settled whether an order compelling arbitration is non-dispositive or dispositive.[11] If an order is non-dispositive, D. Kan. Rule 7.3(b) requires that a party seeking reconsideration file a motion within fourteen days after the order is filed.[12] If an order is dispositive, a party may seek relief under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60.[13] Fed. R. Civ. P. 59(e) requires that a motion to alter or amend a judgment be filed within twenty-eight days of entry of the judgment.[14] Under Fed. R. Civ. P. 60, a party seeking relief from an

---

[9] *See* Order Compelling Arbitration, Doc. 52, at 12.

[10] *See* Reply to Pl.'s Mem. Opposing Defs.' Mot. to Vacate Arbitration Award, Doc. 70, at 14; Mem. in Supp. of Defs.' Mot. to Vacate Arbitration Award, Doc. 64, at 2 n.1.

[11] *See Vernon v. Qwest Commc'ns Int'l*, 925 F. Supp. 2d 1185, 1189 (D. Col. 2013) (noting district courts have come to various conclusions as to whether a motion to compel is a dispositive or non-dispositive motion and concluding a motion to compel is a dispositive motion); *Wilken Partners, L.P. v. Champps Operating Corp.*, 2011 WL 1257480, at *1 (D. Kan. April 4, 2011) (concluding a motion to compel is a non-dispositive motion).

[12] D. Kan. Rule 7.3(b).

[13] *See* D. Kan. Rule 7.3(a) ("Parties seeking reconsideration of dispositive orders or judgments must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60. The court will not grant reconsideration of such an order or judgment under this rule.").

[14] Fed. R. Civ. P. 59(e).

order must file a motion within a reasonable time and in the case of mistake, newly discovered evidence, or fraud, within one year after the entry of the judgment or order.[15]

Mark Travel requests that the Court revisit these issues over two and a half years after the Court entered its Order Compelling Arbitration. Mark Travel fails to provide any explanation for this significant delay, and the Court finds that Mark Travel's delayed request is untimely under the rules governing reconsideration of dispositive and non-dispositive orders.[16] Consequently, the Court need not resolve whether an order to compel arbitration is dispositive or non-dispositive.

Even if the Court were to construe Mark Travel's request as timely, the Court would still deny the request. Relief under Fed. R. Civ. P. 60(b) is "extraordinary and may only be granted in exceptional circumstances."[17] Mark Travel has failed to identify exceptional circumstances justifying relief under Fed. R. Civ. P. 60(b) so the Court will restrict its analysis to the requirements of Fed. R. Civ. P. 59(e) and D. Kan. Rule 7.3(b). Fed. R. Civ. P. 59(e) and D. Kan. Rule 7.3(b) contain essentially the same grounds justifying an alteration, amendment, or reconsideration of an order.[18] A motion seeking reconsideration "shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to

---

[15] *See* Fed. R. Civ. P. 60(c)(1).

[16] *See Sorbo v. United Postal Serv.*, 432 F.3d 1169, 1178–79 (10th Cir. 2005) (upholding a district court's determination that an unexplained one-year delay between judgment and a Rule 60(b) motion was not reasonable); *Welch v. Centex Home Equity Co., L.L.C.*, 224 F.R.D. 490, 493 (D. Kan. 2004) (denying as untimely a motion seeking reconsideration of a non-dispositive order that was filed thirty days after the D. Kan. Rule 7.3(b) deadline); *Weitz v. Lovelace Health System, Inc.*, 214 F.3d 1175, 1178–79 (10th Cir. 2000) (noting that district courts are not permitted to extend the Rule 59(e) filing deadline absent a showing of "unique circumstances").

[17] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000) (internal quotation marks omitted).

[18] *See* D. Kan. Rule 7.3(b) (listing factors a motion to reconsider must be based upon); *Servants of Paraclete*, 204 F.3d at 1012 (listing Rule 59(e) factors); *Ferluga v. Eickhoff*, 236 F.R.D. 546, 548–49 (D. Kan. 2006) (noting the legal standards for Rule 59(e) motions and D. Kan. 7.3(b) motions are "essentially identical").

correct clear error or prevent manifest injustice."[19] It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.[20]

   1.   *Right of non-signatory assignee to compel arbitration*

Mark Travel argues that the United States Supreme Court's ruling in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*[21] provides new support for Mark Travel's argument that an assignee, such as Aero Lloyd, who did not sign the arbitration agreement (a "non-signatory assignee"), may not compel a party, such as Mark Travel, who did sign the arbitration agreement (a "signatory") to arbitrate. The Supreme Court held in *AnimalFeeds* that imposing class arbitration on parties whose arbitration clause did not specifically address class arbitration was not consistent with the FAA.[22]

In the Court's Order Compelling Arbitration, the Court specifically addressed *AnimalFeeds*. The Court noted that under *AnimalFeeds*, "'parties may specify *with whom* they choose to arbitrate their disputes,'" but "'courts and arbitrators must give effect to the contractual rights and expectations of the parties.'"[23] The Court found that the Supreme Court's holding in *AnimalFeeds* did not disturb traditional principles of state contract law, including New York's case law recognizing that a non-signatory assignee may compel a signatory to arbitrate.[24]

---

[19] D. Kan. 7.3(b); *see Servants of Paraclete*, 204 F.3d at 1012 (stating identical grounds for a Rule 59(e) motion).

[20] *Servants of Paraclete*, 204 F.3d at 1012 (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

[21] 559 U.S. 662 (2010).

[22] *Id.* at 662.

[23] Order Compelling Arbitration, Doc. 52, at 10 (internal quotation marks omitted) (quoting *AnimalFeeds*, 559 U.S. at 682–683) (emphasis in original)).

[24] *Id.* at 10, 12 (citing *Cedrela Transport Ltd. v. Banque Cantonale Vaudoise*, 67 F. Supp. 2d 353, 354–55 (S.D.N.Y. 1999) (citing cases in the Second Circuit in which courts recognized that assignees of contracts

Mark Travel fails to cite any case law that extends the Supreme Court's analysis of class-action arbitration in *AnimalFeeds* to non-signatory assignees. The only post-*AnimalFeeds* case Mark Travel cites addresses whether third-party beneficiaries may compel signatories to arbitrate. In *The Republic of Iraq v. BNP Paribas USA*,[25] Iraq sought to arbitrate breach of contract and fiduciary duty claims as a purported third-party beneficiary of a contract between the United Nations and BNP Paribas.[26] The Second Circuit Court of Appeals held that Iraq failed to demonstrate by a preponderance of the evidence that the parties intended to provide a third-party beneficiary, such as Iraq, with the right to invoke arbitration.[27]

*BNP Paribas* is distinguishable from this case. In *BNP Paribus*, the non-signatory third-party beneficiary Iraq had no legal relationship to the signatories.[28] Here, Aero Lloyd, as an assignee of Ryan, had a legal relationship to a signatory. If Ryan brought its payment claim against Mark Travel, Mark Travel would have been required to follow the dispute resolution provision in the charter agreements. Because Aero Lloyd, as an assignee, pursued the payment claims on Ryan's behalf, Aero Lloyd was entitled to compel Mark Travel to arbitration.

Additionally, compelling Mark Travel to arbitrate with Aero Lloyd does not result in the level of prejudice contemplated by the Supreme Court in *AnimalFeeds*. In *AnimalFeeds*, the Supreme Court examined the differences between bilateral and class action arbitration. The

---

containing arbitration clauses may be entitled to compel signatories to those agreements to submit to arbitration); *see Gov't Employees Ins. Co. v Grand Medical Supply, Inc.*, 2012 WL 2577577, at *3 (E.D.N.Y. July 4, 2012) (citing New York cases recognizing a non-signatories right to compel arbitration with a signatory to the agreement).

[25] 472 Fed. Appx. 11, 14 (2nd Cir. 2012).

[26] *Id.* at 12.

[27] *Id.* at 13–14.

[28] *See Holzer v. Mondadori*, 2013 WL 1104269, at *8 (noting that in *BNP Paribas* the Second Circuit found that because Iraq "had no legal relationship to the signatory," there was no clear evidence that the parties "agreed to arbitrate issues of arbitrability with respect to claims against the non-signatory").

Supreme Court found that the differences "are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings."[29]

Here, the nature of the arbitration proceedings did not fundamentally change because Aero Lloyd moved to compel arbitration in Ryan's place. Aero Lloyd was not an unrelated party to the charter agreements or to Mark Travel—Aero Lloyd and Mark Travel signed letter agreements relating to the charter agreements. Aero Lloyd adhered to the dispute resolution provision in the charter agreements, and Mark Travel was able to assert its defenses as if Ryan were prosecuting the claim. Ordering Mark Travel to arbitrate with Aero Lloyd did not significantly defy Mark Travel's expectations under the agreement to arbitrate. For the above reasons, the Court finds that Mark Travel fails to demonstrate that the Supreme Court's ruling in *AnimalFeeds* requires this Court to modify its ruling in the Court's Order Compelling Arbitration and fails to show that the Court's previous ruling resulted in clear error or manifest injustice.

    *2.    Waiver of right to arbitrate*

Mark Travel reasserts it argument that Aero Lloyd waived any right to compel arbitration by pursuing litigation against Mark Travel. The Court addressed this argument in its Order Compelling Arbitration:

> Although Aero Lloyd initiated the lawsuit, Aero Lloyd requested Mark Travel to engage in arbitration before it filed the lawsuit. Aero Lloyd asserted its request for arbitration in its complaint, in its response to Defendant's motion to dismiss, in a motion to the Eastern District of Wisconsin, and in the instant motion before the Court. Although Aero Lloyd requested a jury trial in its complaint, it also requested the Court to enter an order compelling Mark Travel to submit to arbitration.
>
> . . .

---

[29] *AnimalFeeds*, 559 U.S. at 687.

> In addition, although Mark Travel contends that Aero Lloyd "vigorously" litigated before the Court for almost a year before filing its motion to compel arbitration and a substantial amount of litigations has ensued, most of the activity on behalf of Aero Lloyd occurred as a response to Mark Travel's filings.
>
> . . .
>
> This is not a case where Mark Travel was taken by surprise by the request for arbitration. Prior to the filing of the lawsuit, Aero Lloyd requested that Mark Travel engage in arbitration. It appears that only after the parties reached an impasse that Aero Lloyd filed the instant lawsuit.
>
> . . .
>
> Here, Mark Travel does not appear to have shown any substantial prejudice and has not met its burden in demonstrating that Aero Lloyd waived its right to arbitration.[30]

Mark Travel fails to cite an intervening change in controlling law that impacts the Court's ruling, and, instead, appears to be just reasserting its original arguments. A motion for reconsideration, however, is not the place for parties to simply relitigate issues the Court has previously ruled upon.[31]

Finally, Mark Travel argues that Aero Lloyd should be estopped from compelling arbitration because Aero Lloyd's filing of the lawsuit prevented the arbitrators from being able to decide the location of the arbitration.[32] Mark Travel argues that under *Ansari v. Qwest Communications Corp.*,[33] the arbitration had to occur in Kansas because the Court's authority to order arbitration was limited to the District of Kanas. Although *Ansari* does explain the

---

[30] Order Compelling Arbitration, Doc. 52, at 15–18.

[31] *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

[32] The Court has previously ruled that the Court had personal jurisdiction over Martin Travel and denied Martin Travel's request for change of venue. *See* Order Den. Mot. to Dismiss, Doc. 31, at 7–16.

[33] 414 F.3d 1214 (10th Cir. 2005).

limitations on a court's authority to compel arbitration, it does not address Mark Travel's argument that a party is estopped from compelling arbitration because the party limited where the arbitration could occur by filing a motion to compel arbitration. The Court declines to adopt an approach which would essentially prevent parties from being able to move to compel arbitration. Additionally, Aero Lloyd notes that the arbitrators actually did make a determination as to where the arbitration should occur after considering the parties' arguments.

Martin Travel's request for the Court to revisit the previously ruled upon issues is untimely. Even if the Court deemed the request timely, Mark Travel fails to demonstrate the Court should change its ruling in the Court's Order Compelling Arbitration. The Court now turns to Mark Travel's remaining arguments as to why the arbitration award should be vacated.

**B.** **Arbitrators' Powers, Manifest Disregard of the Law, and Defective Hearing**

In the arbitration award, the panel found that alleged oral agreements Mark Travel claimed reduced its liability for shortfall hours were not valid. Mark Travel claims the arbitrators accepted that Mark Travel and Ryan modified the charter agreement for the year-round plane ("alleged modifications") and yet still found the modifications were not valid because Aero Lloyd did not approve them. Mark Travel argues that because the charter agreements formed a contractual relationship only between Mark Travel and Ryan, Aero Lloyd's approval of the alleged modifications was irrelevant. Mark Travel claims that because the arbitrators based the award on Aero Lloyd's failure to approve the alleged modifications rather than on whether Mark Travel failed to abide by the terms of the modifications, the arbitrators exceeded their powers and the award was issued in manifest disregard of the law. Mark Travel also argues that the award was the result of defective and prejudicial proceedings because the arbitrators adjudicated the conduct and rights of Ryan even though Ryan was not a party to the

proceedings. Aero Lloyd argues the arbitrators did not find that Mark Travel and Ryan modified the charter agreement but rather determined that neither Ryan nor Aero Lloyd approved the modifications.

Mark Travel claims that under the agreed upon modifications to the original year-round charter agreement (1) the year-round plane in Milwaukee would move to Detroit, (2) the year-round plane would fly substantially greater hours pursuant to a circulated draft flight schedule, (3) and the Las Vegas flights for the Detroit seasonal aircraft would be cancelled in exchange for a cross-allocation of hours whereby any excess hours flown by the Detroit year-round plane could be applied to the seasonal Detroit planes. The arbitrators rejected Aero Lloyd's claim for shortfall hours for the year-round Detroit plane and awarded Aero Lloyd damages based only on the shortfall hours for the seasonal Detroit plane as well as the seasonal St. Louis plane. Because the only modification that would impact the calculation of shortfall hours for the seasonal airplanes is the alleged agreement to cross-allocate hours, the only relevant question is whether the arbitrators accepted that Ryan and Mark Travel modified the original charter agreements to allow for cross-allocation of hours.

Mark Travel argues the arbitrators found that Ryan adopted the alleged modifications because the arbitrators found that Ryan acted pursuant to a modified charter agreement for the year-round plane. The award notes that after Ryan emailed a December 19, 2003 draft charter agreement ("draft Charter Agreement"), the year-round plane moved from Milwaukee to Detroit and flew according to the flight schedule attached to the draft Charter Agreement. It is not clear from the award that the arbitrators actually accepted that Ryan approved the draft Charter

Agreement.[34] Furthermore, the draft Charter Agreement does not permit cross-allocation of hours. Thus, even if Mark Travel is correct that the arbitrators found Ryan adopted the draft Charter Agreement, this does not necessarily mean that the arbitrators found Ryan approved the cross-allocation modification.

In the award, the arbitrators discussed all of the evidence demonstrating Ryan did not approve the cross-allocation modification. The award notes that the cross-allocation discussion occurred between Mallachy Corrigan, an Aero Lloyd representative, and Mark Travel and that "no written agreement was ever even *prepared* reflecting such discussions."[35] The award also specifically notes that the draft Charter Agreement circulated by Ryan prohibited cross-allocation of hours and that Ryan continued to carry the shortfall hours in its accounting records.[36] The award concludes that "[n]o cross-allocation of aircraft time was permitted by the agreements between the parties."[37] Thus, the award indicates that the arbitrators found that Ryan did not approve the cross-allocation modification.

Mark Travel argues that the arbitrators' finding that the alleged oral agreements were not binding on Aero Lloyd demonstrates that the arbitrators did not resolve the correct question—whether Mark Travel breached its charter agreements with Ryan. As discussed above, however,

---

[34] The award also notes that there was no evidence Ryan or Mark Travel ever signed the December 19, 2003 draft Charter Agreement and that as late as February 26, 2004, Ryan's accountant in charge of the tripartite arrangements was not aware of any alleged agreement beyond May 2004 for the year-round plane. Although the relocation of the plane could suggest that Ryan acted pursuant to the draft Charter Agreement, the arbitrators specifically noted that the relocation of the plane was permitted under the original year-round charter agreement. *See* Award of Arbitrators, Doc. 64-1, at 6, 7–8.

[35] *Id.* at 8 (emphasis in original).

[36] *Id.* at 8–9 (noting that the draft Charter Agreement contained a provision which stated that "any shortfall or excess usage for the Aircraft shall not affect the calculations for another Aircraft").

[37] *Id.* at 10.

the arbitrators found that Ryan failed to approve the cross-allocation modification. Furthermore, Mark Travel's defense to the breach of contract claim was that "that parties to the charter agreements, Ryan and Mark Travel, agreed to specifically modify the manner in which shortfall hours and payments were to be calculated and accounted for, all with the knowledge and consent of Aero Lloyd."[38] The arbitrators examined whether Ryan and Aero Lloyd approved the modifications because Ryan's and Aero Lloyd's approval was central to Mark Travel's defense.

Mark Travel fails to prove that the award should be vacated under 9 U.S.C. § 10(a)(4) because it fails to show that the arbitrators exceeded their powers. The arbitrators resolved whether Mark Travel breached the original charter agreements and owed Ryan damages for shortfall hours. The arbitrators found that the cross-allocation of hours modification was not permitted by the parties' agreements and thus was not a defense to the breach of contract claim. Accordingly, the arbitrators did not exceed their powers in the award.

Mark Travel also fails to prove the arbitrators acted in manifest disregard of the law. "Manifest disregard of the law has been defined as 'willful inattentiveness to the governing law.' To warrant setting aside an arbitration award based on manifest disregard of the law, 'the record must show the arbitrators knew the law and explicitly disregarded it.'"[39] "Errors in an arbitration panel's interpretation or application of the law are generally not reversible."[40] Mark Travel fails to show the arbitrators knew that Aero Lloyd's approval was not relevant to whether Mark Travel breached its agreement with Ryan, especially in light of Mark Travel's defense.

---

[38] Resp'ts Jurisdictional and Other Objections, Answer, Affirmative Defenses and Statement of Set-Off, Doc. 76-2, at 14; *see* Award of Arbitrators, Doc. 64-1, at 2 (noting Mark Travel argued there was no breach of contract because Ryan and Mark Travel modified the agreement with Aero Lloyd's prior knowledge and approval).

[39] *Hollern v. Wachovia Securities, Inc.*, 458 F.3d 1169, 1176 (10th Cir. 2006) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1274 (10th Cir. 2005)).

[40] *Id.*

Additionally, the Court may not overrule the arbitrators' interpretation of the contracts even if the Court would have interpreted the contracts differently than the arbitrators.[41]

Finally, Mark Travel argues the award should be vacated because the arbitrators ruled Ryan was not an indispensable party and yet Ryan's conduct and rights were central to the award. Mark Travel argues this error rendered the proceedings unfair and fundamentally defective. A fundamentally fair arbitration hearing "requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decisionmakers are not infected with bias."[42] Mark Travel fails to demonstrate how it was denied a fundamentally fair hearing, especially since the arbitrators did hear testimony from four of Ryan's current and former employees and received many documents generated by Ryan or sent to Ryan during the disputed time period.

Mark Travel fails to demonstrate the arbitration award should be vacated. Accordingly, the Court denies Mark Travel's Motion to Vacate (Doc. 63).

**C.      Motion to Confirm**

Aero Lloyd requests that this Court (1) confirm the October 24, 2012 arbitration award pursuant to 9 U.S.C. § 9 and § 207 and (2) enter post-award interest accrued from the date of the evidentiary hearing by the arbitrators to the date of the Court's order permitting Mark Travel to deposit the funds with the Clerk of Court.

---

[41] *See Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1183 (10th Cir. 2000) (noting that how the district court would have interpreted the contract is not at issue).

[42] *Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co., Inc.*, 22 F.3d 1010, 1013 (10th Cir. 1994); *see* 9 U.S.C. § 10.

*1. Grounds for affirming*

Aero Lloyd requests that this Court enter an order pursuant to 9 U.S.C. § 9 and § 207 confirming the arbitration award. Under 9 U.S.C. § 9, a court must enter an order confirming the award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." Under 9 U.S.C. § 207, a court must "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards]." Mark Travel argues confirmation under § 207 is not appropriate because the arbitration occurred between citizens of the United States—Mark Travel and Aero Lloyd as an assignee of Ryan. Since confirmation under § 9 is appropriate because the Court denied Mark Travel's Motion to Vacate, the Court will not reach whether confirmation under § 207 is appropriate as well.

*2. Post-award, prejudgment interest*

Aero Lloyd requests that the Court award interest accrued from the date of the October 24, 2012 arbitration award to the December 7, 2012, entry of the Court's order allowing Mark Travel to deposit the award with the Clerk of Court. The Tenth Circuit has stated that "[t]he granting of prejudgment interest from the date of the arbitrator's award in an action seeking to confirm that award is a question of federal law entrusted to the sound discretion of the district court."[43]

Based upon the facts of this case, the Court declines to award post-award, prejudgment interest from the date the award was entered. Although Aero Lloyd requests interest from the date the October 24, 2012 award was issued, under the award Mark Travel was not required to

---

[43] *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 949 (10th Cir. 1989).

pay the sum due until thirty days from the date of the award—November 23, 2012.[44] Pursuant to Fed. R. Civ. P. 67 and D. Kan. Rule 67.1, Mark Travel deposited the funds with the Clerk of Court in order to preclude the accrual of additional interest. Court records indicate the funds were deposited on November 27, 2012. The Court finds that a two business day delay in depositing the funds is inconsequential, especially in light of Mark Travel's willingness to surrender control over the money in dispute. Accordingly, the Court denies Aero Lloyd's request to award post-award, prejudgment interest.

**IT IS ACCORDINGLY ORDERED** this 18th day of September, 2013, that Defendants' Mark Travel and Trans Global Tours Motion to Vacate the Arbitration Award (Doc. 63) is hereby **DENIED**, and Sascha Walter, as Administrator of the Estate of Aero Lloyd's Motion to Enforce Arbitration Award (Doc. 68) is **GRANTED**.

**IT IS SO ORDERED**.

*[signature]*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[44] *See Cessna Aircraft Co. v. Avcorp Industries, Inc.*, — F. Supp. 2d—, 2013 WL 1858530, at *6 (D. Kan. May 1, 2013) (using date payment was due under the award to calculate post-award, prejudgment interest); *United States ex rel. Nat'l Roofing Servs., Inc. v. Lovering–Johnson, Inc.*, 53 F. Supp. 2d 1142, 1148 (D. Kan. 1999) (awarding post-award, prejudgment interest from the date the award was due); *Moran v. Arcano*, 1990 WL 113121, at *3 (S.D.N.Y. July 27, 1990) (noting that the award of post-award, prejudgment interest is a matter left with the district court and that when "the arbitration award calls for the payment of the award at a future date, the post-award prejudgment interest should only run from the time of that future date").